# EXHIBIT A

1  JONATHAN A. STIEGLITZ
   (SBN 278028)
2  jonathan.a.stieglitz@gmail.com
   THE LAW OFFICES OF
3  JONATHAN A. STIEGLITZ
   11845 W. Olympic Blvd., Ste. 800
4  Los Angeles, California 90064
   Telephone:  (323) 979-2063
5  Facsimile:   (323) 488-6748

6  Attorney for Plaintiff
   Keith Feder, M.D., Inc.
7

Electronically FILED by
Superior Court of California,
County of Los Angeles
1/23/2024 11:35 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By Y. Tarasyuk, Deputy Clerk

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                      COUNTY OF LOS ANGELES

10

11  Keith Feder, M.D., Inc.

12              Plaintiff,

13       v.

14  DGA - Producers Pension and Health
    Plans, Inc. and DOES 1-10,

15              Defendant.

16

17

18

19

20

Case No.: 24STCV01720

Complaint For:

1.  NEGLIGENT
    MISREPRESENTATION; AND
2.  PROMISSORY ESTOPPEL

Or in the alternative-

3.  RECOVERY OF BENEFITS
    UNDER 29 U.S.C. §1132 (a)(1)(B)

**(Jury Trial Requested)**

Damages - $38,495.00

21

22

23

24

25

26

27

28

                         Complaint

Plaintiff Keith Feder, M.D., Inc. (hereinafter referred to as "PLAINTIFF" or "Medical Provider") complains and alleges:

## PARTIES

1.     Plaintiff, is and at all relevant times was a medical corporation, organized and existing under the laws of the State of California.  Plaintiff is and at all relevant times was in good standing under the laws of the State of California.

2.     Defendant DGA-Producers Pension and Health Plans, Inc. ("DGA" or "Defendant") is and was licensed to do business in and is and was doing business in the State of California. PLAINTIFF is informed and believes that Defendant is licensed to transact business in the State of California. Defendant is in fact, transacting business in the State of California and is thereby subject to the laws and regulations of the State of California.

3.     The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants DOES 1 through 10, inclusive, are unknown to PLAINTIFF, who therefore sues said defendants by such fictitious names. PLAINTIFF is informed and believes and thereon alleges that each of the defendants designated herein as a DOE is legally responsible in some manner for the events and happenings referred to herein and legally caused injury and damages proximately thereby to PLAINTIFF. PLAINTIFF will seek leave of this Court to amend this Complaint to insert their true names and capacities in place and instead of the fictitious names when they become known to it.

4.     At all times herein mentioned, unless otherwise indicated, DEFENDANT/s were the agents and/or employees of each of the remaining defendants and were at all times acting within the purpose and scope of said agency and employment, and each defendant has ratified and approved the acts of his agent. At all times herein mentioned, DEFENDANT/s had actual or ostensible authority to act on each other's behalf in certifying or authorizing the provision of services; processing and administering the claims and appeals; pricing the claims;

approving or denying the claims; directing each other as to whether and/or how to pay claims; issuing remittance advices and explanations of benefits statements; making payments to Medical Provider and its Patients.

## **GENERAL ALLEGATIONS**

5.     This complaint arises out of the failure of DEFENDANT to make proper payments and/or the underpayment to Medical Provider by DEFENDANT and DOES 1 through 10, inclusive, of amounts due and owing now to Medical Provider for surgical care, treatment and procedures provided to Patients, who are insureds, members, policyholders, certificate-holders or were otherwise covered for health, hospitalization and major medical insurance through policies or certificates of insurance issued and underwritten by DEFENDANT and DOES 1 through 10, inclusive.

6.     Medical Provider is informed and believes based on Anthem's oral and other representations that the Patients were insured by DEFENDANT either as a subscriber to coverage or a dependent of a subscriber to coverage under a policy or certificate of insurance issued and underwritten by DEFENDANT and DOES 1 through 10, inclusive, and each of them. Medical Provider is informed and believes that the Patients entered into a valid insurance agreement with DEFENDANT for the specific purpose of ensuring that the Patients would have access to medically necessary treatments, care, procedures, and surgeries by medical practitioners like Medical Provider and ensuring that DEFENDANT would pay for the health care expenses incurred by the Patient.

7.     It is standard practice in the health care industry that when a medical provider enters into a written preferred provider contract with a health plan such as DEFENDANT, that a medical provider agrees to accept reimbursement that is discounted from the medical provider's total billed charges in exchange for the benefits of being a preferred or contracted provider.

8.     Those benefits include an increased volume of business because the health plan provides financial and other incentives to its members to receive their medical care and treatments from the contracted provider, such as advertising that the provider is "in network" and allowing the members to pay lower co-payments and deductibles to obtain care and treatment from a contracted provider.

9.     Conversely, when a medical provider, such as Medical Provider, does not have a written contract or preferred provider agreement with a health plan, the medical provider receives no referrals from the health plan.

10.     The medical provider has no obligation to reduce its charges. The health plan is not entitled to a discount from the medical provider's total bill charge for the services rendered, because it is not providing the medical provider within network medical provider benefits, such as increased patient volume and direct payment obligations.

11.     The reason why medical providers have chosen to forgo the benefits of a contract with a payor is that, in recent years, many insurers or network holders such as Defendant's representative Anthem have contracted rates for in-network providers that are so meager, one-sided, and onerous, that many providers like Medical Provider have determined that they cannot afford to enter into such contracts. As a result, a growing number of medical providers have become non-contracted or out of network providers.

12.     Payors and insurers still want their patients to be seen and so they commonly promise to pay out of network providers a percentage of the market rate for the procedure, also described as, an average payment for the procedure performed or provided by similarly situated medical providers within similarly situated areas or places of practice. Rather than use the words market rate to simplify terms, payors have long used words or combinations of words such as usual, reasonable, customary, and allowed, all to mean an average payment for a

procedure provided by similarly situated medical providers within similarly situated areas or places of practice ("UCR").

13.     The United States government provides a definition for the term UCR. "The amount paid for a medical service in a geographic area based on what providers in the area usually charge for the same or similar medical service. The UCR amount sometimes is used to determine the allowed amount."[1]

14.     Based upon these criteria, Medical Provider's charges are usual, customary, and reasonable. Medical Provider charged DEFENDANT the same fees that it charges all other payors. Medical Provider's fees are comparable to the prevailing provider rates in the geographic areas to the one in which the services were provided.

15.     DEFENDANT and Anthem use the term UCR in their policies.

16.     When DEFENDANT or Anthem on Defendant's behalf uses the term UCR for the price of a medical service, DEFEDANT and/or Anthem will utilize a medical bill database from Fair Health Inc. or the like to determine the exact dollar amount to be paid for a medical claim.[2]

17.     Fair Health Inc. is a database which is available to the public. It is available for purchase when utilized by entities like DEFENDANT or Anthem and it is available for free in a more limited fashion for use by consumers.[3]

---

[1] *See* Healthcare.gov, UCR (Usual, Customary and Reasonable) (August 1, 2022), https://www.healthcare.gov/glossary/UCR-usual-customary-and-reasonable/ (defining UCR)

[2] United Healthcare, Information on Payment of Out-of-Network Benefits (October 3, 2021), https://www.uhc.com/legal/information-on-payment-of-out-of-network-benefits ("FH, [Fair Health], Benchmarking Database. One of two compilations of information on health care professional charges created by Fair Health and used by affiliates of UnitedHealth Group **to determine payment** for out-of-network professional services when reimbursed under standards such as 'the reasonable and customary amount,' 'the usual, reasonable and customary amount,' 'the prevailing rate,' or other similar terms that base payment on what other healthcare professionals in a geographic area charge for their services."

[3] *See* fairhealthconsumer.org, (August 1, 2022), https://www.

(Continued)

18.     When a medical provider like PLAINTIFF is told that DEFENDANT or Anthem will be paying a claim based on UCR, PLAINTIFF expects that DEFENDANT or Anthem will be utilizing the Fair Health database to calculate the exact dollar amount that will be paid.

19.     In the alternative and separately, Medical Provider is owed proper reimbursement in accordance with the Patient's health plan. *See Marin Gen. Hosp. v. Modesto & Empire Traction Co.,* 581 F.3d 941, 949 (9th Cir. 2009).

20.     Medical Provider is informed based solely on DEFENDANT's representations that Patient's health plan at issue in this litigation is a health plan governed by the Employee Retirement Income Securities Act of 1974 ("ERISA"). Based on DEFENDANTS' representations, Medical Provider asserts that Patient's health plan is an ERISA health plan ("ERISA Plan").

21.     Prior to services being rendered, Medical Provider obtained an assignment from each Patient granting Medical Provider the right to step into the shoes of each Patient with respect to Patient's rights under Patient's ERISA Plan, including but not limited to the right to seek proper reimbursement for medical services as well as to seek legal redress for DEFENDANT's failure to properly administer the terms of the ERISA Plan.

22.     For Patient's claim, DEFENDANT has waived or is estopped from asserting an anti-assignment provision were one even to exist. *See Beverly Oaks Physicians Surgical Ctr., Ltd. Liab. Co. v. Blue Cross & Blue Shield of Ill.,* 983 F.3d 435, 437 (9th Cir. 2020).

---

(Continued)

fairhealthconsumer.org/medical/results (assisting consumers to calculate the amount to be paid for a particular medical procedure)

23.     For the claim at issue in this suit, Medical Provider has spent significant time and money in jumping through the necessary hoops in exhausting its administrative remedies under ERISA.

24.     Medical Provider sent out multiple appeal letters to DEFENDANT and any further appeals would be futile as Medical Provider has received letters stating that DEFENDANT's decision is final.

25.     In either case, Medical Provider has a reputation for providing high quality care and, as a result, Plaintiff brings this suit to obtain appropriate compensation for Medical Provider's services.

## SPECIFIC FACTS

## PATIENT KT

26.     On March 04, 2021, Patient received a surgical procedure from Medical Provider.

27.     On February 17, 2021, so as to determine whether or not to provide services, Medical Provider's employee Jeannie obtained representations from Anthem and DEFENDANT's representative Mike regarding the manner in which Medical Provider would be paid for services.

28.     Medical Provider provided Anthem on behalf of Defendant Medical Provider's name, address, and tax identification number. Medical Provider also represented that it was calling on behalf of an ambulatory surgery center.

29.     Medical Provider asked: what is the Patient's responsibility versus Defendant's responsibility for paying for medical services?

30.     Anthem on behalf of Defendant represented to Medical Provider that Patient's deductible is and was $500.00 and Patient's Max Out Of Pocket ("MOOP") expense is and was $0.00 and that to date for that calendar year Patient had paid $0.00.

31.     Medical Provider asked: does Defendant pay based on UCR for procedure codes 29827, 29823, 29826, 29824, 29999, 76000 and other similar codes within the same family?

32.     Anthem on behalf of Defendant represented to Medical Provider that for services in connection with procedure codes 29827, 29823, 29826, 29824, 29999, 76000 Defendant pays the UCR rate.

33.     Medical Provider asked: does Defendant use a Medicare Fee Schedule to pay for procedure codes 29827, 29823, 29826, 29824, 29999, and 76000?

34.     Anthem on behalf of Defendant represented to Medical Provider that for services in connection with procedure codes 29827, 29823, 29826, 29824, 29999, 76000 Defendant's payment would not be based on the Medicare Fee Schedule.

35.     Defendant also represented that no preauthorization or precertification was required for procedure codes 29827, 29823, 29826, 29824, 29999, 76000.

36.     All of the information obtained was documented by MEDICAL PROVIDER as part of MEDICAL PROVIDER's office policy and practice.

37.     At no time prior to the provision of services to Patient by MEDICAL PROVIDER was MEDICAL PROVIDER advised that Patient's policy or certificate of insurance was subject to certain exclusions, limitations, or qualifications, which might result in denial of coverage, limitation of payment or any other method of payment unrelated to the UCR rate.

38.     Anthem on behalf of DEFENDANT did not make reference to any other portion of Patient's plan that would put MEDICAL PROVIDER on notice of any reduction in the originally stated payment percentage.

39.     Despite having Anthem make these representations on its behalf, DEFENDANT and Anthem knew that they would not be paying Medical Provider at the UCR rate.

40.     Despite having Anthem make these representations on its behalf, DEFENDANT and Anthem knew that they would be paying Medical Provider at a Medicare rate.

41.     Anthem on behalf of Defendant intended by its representations to induce Medical Provider to provide the medical services.

42.     MEDICAL PROVIDER was never provided with a copy of Patient's plan or even a portion of Patient's plan by DEFENDANT or Patient. As a result, MEDICAL PROVIDER could not even make itself aware of any reduction of the payment amount.

43.     Medical Provider relied and provided services solely based on Anthem's representations, promises and statements on behalf of DEFENDANT. Statements which had no relation to DEFENDANT and Patient's plan document, as the statements may or may not have been based in the DEFENDANT or Patient's plan documents, but that bore no consideration when Medical Provider agreed to provide medical services. Medical Provider took Anthem's representations on behalf of DEFENDANT at face value and provided services based solely on those promises and representations.

44.     In the alternative, pursuant to 29 U.S.C. §1132 (a)(1)(B) DEFENDANT has failed to reimburse Patient and now Medical Provider in accordance with the terms of Patient's ERISA Plan.

45.     On February 17, 2021, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to Medical Provider.

46.     Following the medical procedure, Medical Provider submitted a bill or UB-04 to DEFENDANT which stated that Medical Provider had received an assignment from the Patient.

47.     At no point in time did DEFENDANT or Anthem on behalf of Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

COMPLAINT

48.    Over the next couple of months, Medical Provider sent numerous appeal letters to DEFENDANT through Anthem in accordance with ERISA to exhaust all of Patient's and now Medical Provider's administrative remedies.

49.    Medical Provider even sent Anthem on behalf of Defendant a copy of the assignment between the Patient and Medical Provider. The assignment specifically stated that if the health plan has an anti-assignment, Anthem on behalf of Defendant should let Medical Provider know. Therefore, in the event, Medical Provider was not made aware of an anti-assignment, Medical Provider would proceed to obtain payment based on the assignment with the understanding that the health plan did not have an anti-assignment.

50.    In fact, Medical Provider was never informed during the appeal process that Patient's plan had an anti-assignment provision, and that DEFENDANT would only speak with the Patient.

51.    DEFENDANT has made clear that Medical Provider has no further administrative remedies.

52.    In all cases DEFENDANT refused to make any additional payment.

53.    According to Defendant's health plan, Defendant is obligated to pay the 80th percentile of Fair Health.

54.    Defendant and Anthem did not in fact pay the 80th percentile of Fair Health.

55.    The total bill was $30,750.00. Defendant paid $3,318.06 which is less than 5% of the billed amount and does not result in a "reasonable profit" for Medical Provider.

56.    Under either scenario, following the procedure, Medical Provider submitted to DEFENDANT through Anthem any and all billing information required by DEFENDANT and Anthem, including a bill for $30,750.00.

57.    Following the procedure, MEDICAL PROVIDER submitted its claims to DEFENDANT through Anthem accompanied with lengthy operative reports,

COMPLAINT

chart notes, and other medical records.  No matter whether large or small, all of MEDICAL PROVIDER's claims were submitted to DEFENDANT using CPT codes, Healthcare Common Procedure Coding System ("HCPCS"), and modifiers, as necessary. MEDICAL PROVIDER submitted to DEFENDANT through Anthem any and all billing information and any and all additional information requested by DEFENDANT.

58.    DEFENDANTS processed the bill and sent an EOB directed to MEDICAL PROVIDER, still not asserting an anti-assignment provision, and made a payment of $3,318.06.

59.    The amount paid was well below what would result in a "reasonable profit" to Medical Provider and well below the UCR amount represented during the separate oral communications between Medical Provider and DEFENDANT.

## SPECIFIC FACTS

## PATIENT RT

60.    On November 10, 2020, Patient received a surgical procedure from Medical Provider.

61.    On November 09, 2020, so as to determine whether or not to provide services, Medical Provider's employee Jeannie obtained representations from Anthem and DEFENDANT's representative Stacy regarding the manner in which Medical Provider would be paid for services.

62.    Medical Provider provided Anthem on behalf of Defendant Medical Provider's name, address, and tax identification number. Medical Provider also represented that it was calling on behalf of an ambulatory surgery center.

63.    Medical Provider asked: what is the Patient's responsibility versus Defendant's responsibility for paying for medical services?

64.    Anthem on behalf of Defendant represented to Medical Provider that Patient's deductible is and was $500.00 and Patient's Max Out Of Pocket

("MOOP") expense is and was $0.00 and that to date for that calendar year Patient had paid $0.00.

65.     Medical Provider asked: does Defendant pay based on UCR for procedure codes 24341, 24120, 29065 and other similar codes within the same family?

66.     Anthem on behalf of Defendant represented to Medical Provider that for services in connection with procedure codes 24341, 24120, 29065 Defendant pays the UCR rate.

67.     Medical Provider asked: does Defendant use a Medicare Fee Schedule to pay for procedure codes 24341, 24120 and 29065?

68.     Anthem on behalf of Defendant represented to Medical Provider that for services in connection with procedure codes 24341, 24120, 29065 Defendant's payment would not be based on the Medicare Fee Schedule.

69.     Defendant also represented that no preauthorization or precertification was required for procedure codes 24341, 24120, 29065.

70.     All of the information obtained was documented by MEDICAL PROVIDER as part of MEDICAL PROVIDER's office policy and practice.

71.     At no time prior to the provision of services to Patient by MEDICAL PROVIDER was MEDICAL PROVIDER advised that Patient's policy or certificate of insurance was subject to certain exclusions, limitations, or qualifications, which might result in denial of coverage, limitation of payment or any other method of payment unrelated to the UCR rate.

72.     Anthem on behalf of DEFENDANT did not make reference to any other portion of Patient's plan that would put MEDICAL PROVIDER on notice of any reduction in the originally stated payment percentage.

73.     Despite having Anthem make these representations on its behalf, DEFENDANT and Anthem knew that they would not be paying Medical Provider at the UCR rate.

74.    Despite having Anthem make these representations on its behalf, DEFENDANT and Anthem knew that they would be paying Medical Provider at a Medicare rate.

75.    Anthem on behalf of Defendant intended by its representations to induce Medical Provider to provide the medical services.

76.    MEDICAL PROVIDER was never provided with a copy of Patient's plan or even a portion of Patient's plan by DEFENDANT or Patient. As a result, MEDICAL PROVIDER could not even make itself aware of any reduction of the payment amount.

77.    Medical Provider relied and provided services solely based on Anthem's representations, promises and statements on behalf of DEFENDANT. Statements which had no relation to DEFENDANT and Patient's plan document, as the statements may or may not have been based in the DEFENDANT or Patient's plan documents, but that bore no consideration when Medical Provider agreed to provide medical services. Medical Provider took Anthem's representations on behalf of DEFENDANT at face value and provided services based solely on those promises and representations.

78.    In the alternative, pursuant to 29 U.S.C. §1132 (a)(1)(B) DEFENDANT has failed to reimburse Patient and now Medical Provider in accordance with the terms of Patient's ERISA Plan.

79.    On November 09, 2020, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to Medical Provider.

80.    Following the medical procedure, Medical Provider submitted a bill or UB-04 to DEFENDANT which stated that Medical Provider had received an assignment from the Patient.

81.    At no point in time did DEFENDANT or Anthem on behalf of Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

COMPLAINT

82.     Over the next couple of months, Medical Provider sent numerous appeal letters to DEFENDANT through Anthem in accordance with ERISA to exhaust all of Patient's and now Medical Provider's administrative remedies.

83.     Medical Provider even sent Anthem on behalf of Defendant a copy of the assignment between the Patient and Medical Provider. The assignment specifically stated that if the health plan has an anti-assignment, Anthem on behalf of Defendant should let Medical Provider know. Therefore, in the event, Medical Provider was not made aware of an anti-assignment, Medical Provider would proceed to obtain payment based on the assignment with the understanding that the health plan did not have an anti-assignment.

84.     In fact, Medical Provider was never informed during the appeal process that Patient's plan had an anti-assignment provision, and that DEFENDANT would only speak with the Patient.

85.     DEFENDANT has made clear that Medical Provider has no further administrative remedies.

86.     In all cases DEFENDANT refused to make any additional payment.

87.     According to Defendant's health plan, Defendant is obligated to pay the 80th percentile of Fair Health.

88.     Defendant and Anthem did not in fact pay the 80th percentile of Fair Health.

89.     The total bill was $7,745.00. Defendant paid $1,251.60 which is less than 5% of the billed amount and does not result in a "reasonable profit" for Medical Provider.

90.     Under either scenario, following the procedure, Medical Provider submitted to DEFENDANT through Anthem any and all billing information required by DEFENDANT and Anthem, including a bill for $7,745.00.

91.     Following the procedure, MEDICAL PROVIDER submitted its claims to DEFENDANT through Anthem accompanied with lengthy operative reports,

chart notes, and other medical records.  No matter whether large or small, all of MEDICAL PROVIDER's claims were submitted to DEFENDANT using CPT codes, Healthcare Common Procedure Coding System ("HCPCS"), and modifiers, as necessary. MEDICAL PROVIDER submitted to DEFENDANT through Anthem any and all billing information and any and all additional information requested by DEFENDANT.

92.    DEFENDANTS processed the bill and sent an EOB directed to MEDICAL PROVIDER, still not asserting an anti-assignment provision, and made a payment of $1,251.60.

93.    The amount paid was well below what would result in a "reasonable profit" to Medical Provider and well below the UCR amount represented during the separate oral communications between Medical Provider and DEFENDANT.

## FIRST CAUSE OF ACTION
## FOR NEGLIGENT MISREPRESENTATION

94.    Plaintiff incorporates by reference all previous paragraphs as though fully set forth herein.

95.    Anthem on behalf of DEFENDANT falsely represented to Medical Provider that payment for services would be based on UCR and not Medicare.

96.    Anthem on behalf of DEFENDANT knew that any payment made to Medical Provider would not be made the UCR rate and would instead be made at the Medicare rate.

97.    Anthem on behalf of DEFENDANT should have known that in making the representations that payment would be made at the UCR and not Medicare rate that Medical Provider would go on to provide the services.

98.    Medical Provider then relied on Anthem on behalf of DEFENDANT's misrepresentation and provided the services to Patient. Medical Provider has been damaged in not receiving payment at the represented UCR rate.

99.    Medical Provider is owed an amount to be determined at trial.

## SECOND CAUSE OF ACTION

## PROMISSORY ESTOPPEL

100.   Plaintiff incorporates by reference all previous paragraphs as though fully set forth herein.

101.   Anthem on behalf of DEFENDANT promised and asserted that the procedures to be performed and which were performed for and on the Patients were covered, authorized, certified and would be paid for at the rate of reasonable and customary and or average billed charges of similarly situated medical providers within similarly situated areas or places of practice, UCR.

102.   Medical Provider only decided to provide services because they were assured that payment would be made at the UCR rate not based on Medicare.

103.   After assuring and promising Medical Provider that payment would be at the UCR rate, DEFENDANT should have reasonably expected that Medical Provider would then go on to provide medical services expecting that payment would be made at that rate.

104.   Medical Provider did rely on the statements, assertions and promises of Anthem on behalf of DEFENDANT and provided the medical services to the Patient.

105.   As a direct and proximate result of Anthem on behalf of DEFENDANT's misrepresentations, Medical Provider has been damaged in an amount equal to the amount of money Medical Provider should have received had DEFENDANT paid the cost of the procedures at the UCR rate.

106.   The detriment suffered by Medical Provider is the amount required to make Medical Provider whole, for the time, cost and money expended in providing medical services to Patient. As a further direct, legal, and proximate result of Medical Provider's detrimental reliance on the oral agreement and the misrepresentations of defendants, and each of them, Medical Provider has been damaged due to the loss of monies expended in providing said medical services for

- 16 -

which it was significantly underpaid and has suffered damages in the loss of use of the proceeds and income to be derived from the medical services.

107.   In light of the material representations and misrepresentations of Anthem on behalf DEFENDANT made to Medical Provider, and of Medical Provider's reliance on the oral agreement, and oral representations made by DEFENDANT and each of them, and based upon Medical Provider's detrimental reliance thereon, DEFENDANT, and each of them, are estopped from denying payment and indemnification for Patient's treatment at the reasonable and customary and or market rate.

108.   Medical Provider is owed an amount to be determined at trial.

<u>**THIRD CAUSE OF ACTION**</u>

<u>**ENFORCEMENT UNDER 29 U.S.C § 1132 (a)(1)(B) FOR FAILURE TO**</u>

<u>**PAY ERISA PLAN BENEFITS**</u>

109.   Plaintiff incorporates by reference all previous paragraphs as though fully set forth herein.

110.   This cause of action is alleged by Medical Provider for relief in connection with claims for medical services rendered in connection with healthcare benefits plans administered and/or underwritten by DEFENDANT.

111.   Medical Provider seeks to recover benefits and enforce rights to benefits under 29 U.S.C. §1132 (a)(1)(B). Medical Provider has standing to pursue these claims as the assignee of member/patient's rights. As the assignee of rights, Medical Provider is a "beneficiary" entitled to collect benefits and are the "claimant" for purposes of the ERISA statute and regulations. ERISA authorizes actions under 29 U.S.C. § 1132 (a)(1)(B) to be brought directly against DEFENDANT the party with actual control over the benefit and payment determinations with respect to Medical Provider's claims.

112.   DEFENDANT is the payor of benefits.

1    113.   By reason of the foregoing, Medical Provider is entitled to recover

2  ERISA benefits due and owing in an amount to be proven at trial, and Plaintiff

3  seeks recovery of such benefits by way of the present action.

4  ///

5  ///

6  ///

7  ///

8  ///

9  ///

10  ///

11  ///

12  ///

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

COMPLAINT

## **PRAYER FOR RELIEF**

**WHEREFORE,** Keith Feder, M.D., Inc. prays for judgment against defendants as follows:

1.     For compensatory damages in an amount to be determined, plus statutory interest;

2.     For restitution in an amount to be determined, plus statutory interest;

3.     For a declaration that DEFENDANT is obligated to pay plaintiff all monies owed for services rendered to the Patient;

4.     For attorney fees; and

5.     For such other relief as the Court deems just and appropriate.

Dated: January 23, 2024                LAW OFFICE OF JONATHAN A.
                                       STIEGLITZ

                                       By: /s/ Jonathan A. Stieglitz
                                           JONATHAN A. STIEGLITZ
                                           Keith Feder, M.D., Inc.

## **DEMAND FOR JURY TRIAL**

Plaintiff, Keith Feder, M.D., Inc., hereby demands a jury trial as provided by law.

Dated: January 23, 2024                LAW OFFICE OF JONATHAN A.
                                       STIEGLITZ

                                       By: /s/ Jonathan A. Stieglitz
                                           JONATHAN A. STIEGLITZ
                                           Attorneys for Plaintiff,
                                           Keith Feder, M.D., Inc.

- 19 -

COMPLAINT

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF LOS ANGELES

Reserved for Clerk's File Stamp

**FILED**
Superior Court of California
County of Los Angeles

01/24/2024

David W. Slayton, Executive Officer / Clerk of Court

By: _____ R. Lee _____ Deputy

COURTHOUSE ADDRESS:

Stanley Mosk Courthouse

111 North Hill Street, Los Angeles, CA 90012

PLAINTIFF(S):

Keith Feder, M.D., Inc.

DEFENDANT(S):

DGA - Producers Pension and Health Plans, Inc.

| **ORDER TO SHOW CAUSE HEARING** | CASE NUMBER: |
| --- | --- |
| | 24STCV01720 |

To the party / attorney of record:

You are ordered to appear for an Order to Show Cause Hearing on <u>07/12/2024</u> at <u>8:30 AM</u> in department <u>58</u> of this court, <u>Stanley Mosk Courthouse</u>, and show cause why sanctions should not be imposed for:

[✔]   Failure to file proof of service.

Failure to comply or appear may result in sanctions pursuant to one or more of the following:  California Rules of Court, rule 2.30 and rule 3.1340; Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.310, 583.360, 583.410, 583.420, 583.430; and Government Code section 68608.

[✔]   To avoid a mandatory appearance all required documents must be filed at least 5 days prior to the date of the hearing.

Dated: <u>01/24/2024</u>

_____
Bruce G. Iwasaki / Judge
Judicial Officer

**ORDER TO SHOW CAUSE HEARING**

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>01/24/2024<br>David W. Slayton, Executive Officer / Clerk of Court<br>By: _____ R. Lee _____ Deputy |
| PLAINTIFF/PETITIONER:<br>Keith Feder, M.D., Inc. | |
| DEFENDANT/RESPONDENT:<br>DGA - Producers Pension and Health Plans, Inc. | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>24STCV01720 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Order to Show Cause Failure to File Proof of Service upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Jonathan A Stieglitz
Stieglitz Law
11845 W Olympic Blvd
Ste 800
Los Angeles, CA 90064

David W. Slayton, Executive Officer / Clerk of Court

Dated: <u>01/24/2024</u>                    By:  <u>R. Lee</u>
                                                         Deputy Clerk

**CERTIFICATE OF MAILING**

Electronically Received 07/01/2024 12:00 AM

1 | JONATHAN A. STIEGLITZ
2 | (SBN 278028)
jonathan.a.stieglitz@gmail.com
3 | THE LAW OFFICES OF
JONATHAN A. STIEGLITZ
4 | 11845 W. Olympic Blvd., Ste. 800
Los Angeles, California 90064
5 | Telephone:   (323) 979-2063
Facsimile:   (323) 488-6748
6
Attorney for Plaintiff
7 | Keith Feder, M.D., Inc.

8
SUPERIOR COURT OF THE STATE OF CALIFORNIA

9
COUNTY OF LOS ANGELES

10

| | |
|---|---|
| Keith Feder, M.D., Inc. | Case No.: 24STCV01720 |
| Plaintiff, | First Amended Complaint For: |
| v. | 1. NEGLIGENT MISREPRESENTATION; AND |
| Anthem Blue Cross Life and Health Insurance Co., Southwest Carpenters Health and Welfare Trust and DOES 1-10, | 2. PROMISSORY ESTOPPEL |
| Defendant. | Or in the alternative- |
| | 3. RECOVERY OF BENEFITS UNDER 29 U.S.C. §1132 (a)(1)(B) |
| | **(Jury Trial Requested)** |
| | Damages - $38,495.00 |

First Amended Complaint

Plaintiff Keith Feder, M.D., Inc. (hereinafter referred to as "PLAINTIFF" or "Medical Provider") complains and alleges:

**PARTIES**

1.     Plaintiff, is and at all relevant times was a medical corporation, organized and existing under the laws of the State of California.  Plaintiff is and at all relevant times was in good standing under the laws of the State of California.

2.     Defendant Carpenters Southwest Carpenters Health and Welfare Trust ("SCHWT" or "Defendant") is and was licensed to do business in and is and was doing business in the State of California. PLAINTIFF is informed and believes that Defendant is licensed to transact business in the State of California. Defendant is in fact, transacting business in the State of California and is thereby subject to the laws and regulations of the State of California.

3.     Defendant Anthem Blue Cross Life and Health Insurance Co. ("ABCLH" or "Anthem") is and was licensed to do business in and is and was doing business in the State of California. PLAINTIFF is informed and believes that ABCLH is licensed to transact business in the State of California. Defendant is in fact, transacting business in the State of California and is thereby subject to the laws and regulations of the State of California.

4.     SCHWT and Anthem will be referred to as Defendants.

5.     The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants DOES 1 through 10, inclusive, are unknown to PLAINTIFF, who therefore sues said defendants by such fictitious names. PLAINTIFF is informed and believes and thereon alleges that each of the defendants designated herein as a DOE is legally responsible in some manner for the events and happenings referred to herein and legally caused injury and damages proximately thereby to PLAINTIFF. PLAINTIFF will seek leave of this Court to amend this Complaint to insert their true names and capacities in place and instead of the fictitious names when they become known to it.

1        6.    At all times herein mentioned, unless otherwise indicated,

2    DEFENDANT/s were the agents and/or employees of each of the remaining

3    defendants and were at all times acting within the purpose and scope of said agency

4    and employment, and each defendant has ratified and approved the acts of his

5    agent. At all times herein mentioned, DEFENDANT/s had actual or ostensible

6    authority to act on each other's behalf in certifying or authorizing the provision of

7    services; processing and administering the claims and appeals; pricing the claims;

8    approving or denying the claims; directing each other as to whether and/or how to

9    pay claims; issuing remittance advices and explanations of benefits statements;

10   making payments to Medical Provider and its Patients.

11   **GENERAL ALLEGATIONS**

12       7.    This complaint arises out of the failure of DEFENDANT to make

13   proper payments and/or the underpayment to Medical Provider by DEFENDANT

14   and DOES 1 through 10, inclusive, of amounts due and owing now to Medical

15   Provider for surgical care, treatment and procedures provided to Patients, who are

16   insureds, members, policyholders, certificate-holders or were otherwise covered for

17   health, hospitalization and major medical insurance through policies or certificates

18   of insurance issued and underwritten by DEFENDANT and DOES 1 through 10,

19   inclusive.

20       8.    Medical Provider is informed and believes based on Anthem's oral and

21   other representations that the Patients were insured by DEFENDANT either as a

22   subscriber to coverage or a dependent of a subscriber to coverage under a policy or

23   certificate of insurance issued and underwritten by DEFENDANT and DOES 1

24   through 10, inclusive, and each of them. Medical Provider is informed and believes

25   that the Patients entered into a valid insurance agreement with DEFENDANT for

26   the specific purpose of ensuring that the Patients would have access to medically

27   necessary treatments, care, procedures, and surgeries by medical practitioners like

28

- 3 -

FIRST AMENDED COMPLAINT

Medical Provider and ensuring that DEFENDANT would pay for the health care expenses incurred by the Patient.

9.     It is standard practice in the health care industry that when a medical provider enters into a written preferred provider contract with a health plan such as DEFENDANT, that a medical provider agrees to accept reimbursement that is discounted from the medical provider's total billed charges in exchange for the benefits of being a preferred or contracted provider.

10.    Those benefits include an increased volume of business because the health plan provides financial and other incentives to its members to receive their medical care and treatments from the contracted provider, such as advertising that the provider is "in network" and allowing the members to pay lower co-payments and deductibles to obtain care and treatment from a contracted provider.

11.    Conversely, when a medical provider, such as Medical Provider, does not have a written contract or preferred provider agreement with a health plan, the medical provider receives no referrals from the health plan.

12.    The medical provider has no obligation to reduce its charges. The health plan is not entitled to a discount from the medical provider's total bill charge for the services rendered, because it is not providing the medical provider within network medical provider benefits, such as increased patient volume and direct payment obligations.

13.    The reason why medical providers have chosen to forgo the benefits of a contract with a payor is that, in recent years, many insurers or network holders such as Defendant's representative Anthem have contracted rates for in-network providers that are so meager, one-sided, and onerous, that many providers like Medical Provider have determined that they cannot afford to enter into such contracts. As a result, a growing number of medical providers have become non-contracted or out of network providers.

14.     Payors and insurers still want their patients to be seen and so they commonly promise to pay out of network providers a percentage of the market rate for the procedure, also described as, an average payment for the procedure performed or provided by similarly situated medical providers within similarly situated areas or places of practice. Rather than use the words market rate to simplify terms, payors have long used words or combinations of words such as usual, reasonable, customary, and allowed, all to mean an average payment for a procedure provided by similarly situated medical providers within similarly situated areas or places of practice ("UCR").

15.     The United States government provides a definition for the term UCR. "The amount paid for a medical service in a geographic area based on what providers in the area usually charge for the same or similar medical service. The UCR amount sometimes is used to determine the allowed amount."[1]

16.     Based upon these criteria, Medical Provider's charges are usual, customary, and reasonable. Medical Provider charged DEFENDANT the same fees that it charges all other payors. Medical Provider's fees are comparable to the prevailing provider rates in the geographic areas to the one in which the services were provided.

17.     DEFENDANT and Anthem use the term UCR in their policies.

18.     When DEFENDANT or Anthem on Defendant's behalf uses the term UCR for the price of a medical service, DEFEDANT and/or Anthem will utilize a medical bill database from Fair Health Inc. or the like to determine the exact dollar amount to be paid for a medical claim.[2]

---

[1] *See* Healthcare.gov, UCR (Usual, Customary and Reasonable) (August 1, 2022), https://www.healthcare.gov/glossary/UCR-usual-customary-and-reasonable/ (defining UCR)

[2] United Healthcare, Information on Payment of Out-of-Network Benefits (October 3, 2021), https://www.uhc.com/legal/information-on-payment-of-out-of-network-benefits ("FH, [Fair Health], Benchmarking Database. One of two

(Continued)

- 5 -

FIRST AMENDED COMPLAINT

19.     Fair Health Inc. is a database which is available to the public. It is available for purchase when utilized by entities like DEFENDANT or Anthem and it is available for free in a more limited fashion for use by consumers.[3]

20.     When a medical provider like PLAINTIFF is told that DEFENDANT or Anthem will be paying a claim based on UCR, PLAINTIFF expects that DEFENDANT or Anthem will be utilizing the Fair Health database to calculate the exact dollar amount that will be paid.

21.     In the alternative and separately, Medical Provider is owed proper reimbursement in accordance with the Patient's health plan. *See Marin Gen. Hosp. v. Modesto & Empire Traction Co.,* 581 F.3d 941, 949 (9th Cir. 2009).

22.     Medical Provider is informed based solely on DEFENDANT's representations that Patient's health plan at issue in this litigation is a health plan governed by the Employee Retirement Income Securities Act of 1974 ("ERISA"). Based on DEFENDANTS' representations, Medical Provider asserts that Patient's health plan is an ERISA health plan ("ERISA Plan").

23.     Prior to services being rendered, Medical Provider obtained an assignment from each Patient granting Medical Provider the right to step into the shoes of each Patient with respect to Patient's rights under Patient's ERISA Plan, including but not limited to the right to seek proper reimbursement for medical

_____

(Continued)

compilations of information on health care professional charges created by Fair Health and used by affiliates of UnitedHealth Group **to determine payment** for out-of-network professional services when reimbursed under standards such as 'the reasonable and customary amount,' 'the usual, reasonable and customary amount,' 'the prevailing rate,' or other similar terms that base payment on what other healthcare professionals in a geographic area charge for their services."

[3] *See* fairhealthconsumer.org, (August 1, 2022), https://www. fairhealthconsumer.org/medical/results (assisting consumers to calculate the amount to be paid for a particular medical procedure)

FIRST AMENDED COMPLAINT

1   services as well as to seek legal redress for DEFENDANT's failure to properly

2   administer the terms of the ERISA Plan.

3        24.    For Patient's claim, DEFENDANT has waived or is estopped from

4   asserting an anti-assignment provision were one even to exist. *See Beverly Oaks*

5   *Physicians Surgical Ctr., Ltd. Liab. Co. v. Blue Cross & Blue Shield of Ill.*, 983

6   F.3d 435, 437 (9th Cir. 2020).

7        25.    For the claim at issue in this suit, Medical Provider has spent

8   significant time and money in jumping through the necessary hoops in exhausting

9   its administrative remedies under ERISA.

10        26.    Medical Provider sent out multiple appeal letters to DEFENDANT and

11   any further appeals would be futile as Medical Provider has received letters stating

12   that DEFENDANT's decision is final.

13        27.    In either case, Medical Provider has a reputation for providing high

14   quality care and, as a result, Plaintiff brings this suit to obtain appropriate

15   compensation for Medical Provider's services.

16   **SPECIFIC FACTS**

17   **PATIENT KT**

18        28.    On March 04, 2021, Patient received a surgical procedure from

19   Medical Provider.

20        29.    On February 17, 2021, so as to determine whether or not to provide

21   services, Medical Provider's employee Jeannie obtained representations and

22   promises from Anthem and DEFENDANT's representative Mike regarding the

23   specific rate at which Defendant presently pays as well as the information necessary

24   for Medical Provider to calculate the amount Defendant pays for the intended

25   services.[4] The call was made specifically in connection with Patient KT and the

26   procedures Patient KT sought to receive from Medical Provider.

27
28        [4] To calculate the amount paid, Medical Provider takes the Fair Health value

(Continued)

FIRST AMENDED COMPLAINT

30.     Medical Provider provided Anthem on behalf of Defendant Medical Provider's name, address, and tax identification number. Medical Provider also represented that it was calling on behalf of an orthopedists' office.

31.     Medical Provider asked: what is the Patient's responsibility versus Defendant's responsibility for paying for medical services?

32.     Anthem on behalf of Defendant represented to Medical Provider that Patient's deductible is and was $500.00 and Patient's Max Out Of Pocket ("MOOP") expense is and was $0.00 and that to date for that calendar year Patient had paid $0.00.

33.     Medical Provider asked: does Defendant pay based on UCR for procedure codes 29827, 29823, 29826, 29824, 29999, 76000 and other similar codes within the same family? Medical Provider was seeking a specific promise about how Defendant presently pays for the procedure codes.

34.     Anthem on behalf of Defendant represented to Medical Provider that for services in connection with procedure codes 29827, 29823, 29826, 29824, 29999, 76000 Defendant pays the UCR rate.

35.     Medical Provider asked: does Defendant use a Medicare Fee Schedule to pay for procedure codes 29827, 29823, 29826, 29824, 29999, and 76000? Medical Provider was seeking a specific promise that Defendant does not pay based on a Medicare payment rate for the procedure codes.

36.     Anthem on behalf of Defendant promised that for services in connection with procedure codes 29827, 29823, 29826, 29824, 29999, 76000 Defendant does not pay based on a Medicare payment rate.

---

(Continued)

for the procedure codes and then subtracts the Patient's responsibility (represented here by the MOOP). The remainder is the amount Defendant pays.

FIRST AMENDED COMPLAINT

37.     These representations were statements of **fact** *not* **opinion**. Defendant's representative was not giving an opinion when Defendant's representative stated that payment is based on UCR and not based on Medicare. Defendant's representative was not making a prediction. Defendant's representative's job was to provide the information, promises and representations sought by Medical Providers and to provide it accurately.

38.     All of the information, promises and representations obtained was documented by MEDICAL PROVIDER as part of MEDICAL PROVIDER's office policy and practice.

39.     At no time prior to the provision of services to Patient by MEDICAL PROVIDER was MEDICAL PROVIDER advised that Patient's policy or certificate of insurance was subject to certain exclusions, limitations, or qualifications, which might result in denial of coverage, limitation of payment or any other method of payment unrelated to the UCR rate.

40.     Anthem on behalf of DEFENDANT did not make reference to any other portion of Patient's plan that would put MEDICAL PROVIDER on notice of any reduction in the originally stated payment percentage.

41.     Despite having Anthem make these representations on its behalf, DEFENDANT and Anthem knew or should have known that they would not be paying Medical Provider at the UCR rate.

42.     Despite having Anthem make these representations on its behalf, DEFENDANT and Anthem knew or should have known that they would be paying Medical Provider at a Medicare rate.

43.     Defendant honestly believed the representations and promises it was making to Medical Provider were true. However, there were no reasonable grounds for Defendant to have had that belief.

44.     Anthem on behalf of Defendant intended by its representations to induce Medical Provider to provide the medical services.

FIRST AMENDED COMPLAINT

45.     MEDICAL PROVIDER was never provided with a copy of Patient's plan or even a portion of Patient's plan by DEFENDANT or Patient. As a result, MEDICAL PROVIDER could not even make itself aware of any reduction of the payment amount.

46.     Medical Provider relied and provided services solely based on Anthem's representations, promises and statements on behalf of DEFENDANT. Statements which had no relation to DEFENDANT and Patient's plan document, as the statements may or may not have been based in the DEFENDANT or Patient's plan documents, but that bore no consideration when Medical Provider agreed to provide medical services. Medical Provider took Anthem's representations on behalf of DEFENDANT at face value and provided services based solely on those promises and representations.

47.     In the alternative, pursuant to 29 U.S.C. §1132 (a)(1)(B) DEFENDANT has failed to reimburse Patient and now Medical Provider in accordance with the terms of Patient's ERISA Plan.

48.     On February 17, 2021, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to Medical Provider.

49.     Following the medical procedure, Medical Provider submitted a bill or UB-04 to DEFENDANT which stated that Medical Provider had received an assignment from the Patient.

50.     At no point in time did DEFENDANT or Anthem on behalf of Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

51.     Over the next couple of months, Medical Provider sent numerous appeal letters to DEFENDANT through Anthem in accordance with ERISA to exhaust all of Patient's and now Medical Provider's administrative remedies.

52.     Medical Provider even sent Anthem on behalf of Defendant a copy of the assignment between the Patient and Medical Provider. The assignment

specifically stated that if the health plan has an anti-assignment, Anthem on behalf of Defendant should let Medical Provider know. Therefore, in the event, Medical Provider was not made aware of an anti-assignment, Medical Provider would proceed to obtain payment based on the assignment with the understanding that the health plan did not have an anti-assignment.

53.    In fact, Medical Provider was never informed during the appeal process that Patient's plan had an anti-assignment provision, and that DEFENDANT would only speak with the Patient.

54.    DEFENDANT has made clear that Medical Provider has no further administrative remedies.

55.    In all cases DEFENDANT refused to make any additional payment.

56.    According to Defendant's health plan, Defendant is obligated to pay based on Medical Provider's billed amount.

57.    Defendant and Anthem did not in fact pay based on Medical Provider's billed amount.

58.    The total bill was $30,750.00. Defendant paid $3,318.06 which is less than 10% of the billed amount and is not in accordance with the Plan.

59.    Under either scenario, following the procedure, Medical Provider submitted to DEFENDANT through Anthem any and all billing information required by DEFENDANT and Anthem, including a bill for $30,750.00.

60.    Following the procedure, MEDICAL PROVIDER submitted its claims to DEFENDANT through Anthem accompanied with lengthy operative reports, chart notes, and other medical records.  No matter whether large or small, all of MEDICAL PROVIDER's claims were submitted to DEFENDANT using CPT codes, Healthcare Common Procedure Coding System ("HCPCS"), and modifiers, as necessary. MEDICAL PROVIDER submitted to DEFENDANT through Anthem any and all billing information and any and all additional information requested by DEFENDANT.

61.   DEFENDANTS processed the bill and sent an EOB directed to MEDICAL PROVIDER, still not asserting an anti-assignment provision, and made a payment of $3,318.06.

62.   The amount paid was well below Medical Provider's bill and well below the UCR amount represented during the separate oral communications between Medical Provider and DEFENDANTS.

### SPECIFIC FACTS
### PATIENT RT

63.   On November 10, 2020, Patient received a surgical procedure from Medical Provider.

64.   On November 9, 2020, so as to determine whether or not to provide services, Medical Provider's employee Jeannie obtained representations and promises from Anthem and DEFENDANT's representative Stacy regarding the specific rate at which Defendant presently pays as well as the information necessary for Medical Provider to calculate the amount Defendant pays for the intended services.[5] The call was made specifically in connection with Patient RT and the procedures Patient RT sought to receive from Medical Provider.

65.   .

66.   Medical Provider provided Anthem on behalf of Defendant Medical Provider's name, address, and tax identification number. Medical Provider also represented that it was calling on behalf of an orthopedist's office.

67.   Medical Provider asked: what is the Patient's responsibility versus Defendant's responsibility for paying for medical services?

---

[5] To calculate the amount paid, Medical Provider takes the Fair Health value for the procedure codes and then subtracts the Patient's responsibility (represented here by the MOOP). The remainder is the amount Defendant pays.

- 12 -

FIRST AMENDED COMPLAINT

68.     Anthem on behalf of Defendant represented to Medical Provider that Patient's deductible is and was $500.00 and Patient's Max Out Of Pocket ("MOOP") expense is and was $0.00 and that to date for that calendar year Patient had paid $0.00.

69.     Medical Provider asked: does Defendant pay based on UCR for procedure codes 24341, 24120, 29065 and other similar codes within the same family? Medical Provider was seeking a specific promise about how Defendant presently pays for the procedure codes.

70.     Anthem on behalf of Defendant represented to Medical Provider that for services in connection with procedure codes 24341, 24120, 29065 Defendant pays the UCR rate.

71.     Medical Provider asked: does Defendant use a Medicare Fee Schedule to pay for procedure codes 24341, 24120 and 29065? Medical Provider was seeking a specific promise that Defendant does not pay based on a Medicare payment rate for the procedure codes.

72.     Anthem on behalf of Defendant represented to Medical Provider that for services in connection with procedure codes 24341, 24120, 29065 Defendant does not pay based on a Medicare payment rate.

73.     These representations were statements of **fact** *not* **opinion**. Defendant's representative was not giving an opinion when Defendant's representative stated that payment is based on UCR and not based on Medicare. Defendant's representative was not making a prediction. Defendant's representative's job was to provide the information, promises and representations sought by Medical Providers and to provide it accurately.

74.     All of the information obtained was documented by MEDICAL PROVIDER as part of MEDICAL PROVIDER's office policy and practice.

75.     At no time prior to the provision of services to Patient by MEDICAL PROVIDER was MEDICAL PROVIDER advised that Patient's policy or

- 13 -

FIRST AMENDED COMPLAINT

certificate of insurance was subject to certain exclusions, limitations, or qualifications, which might result in denial of coverage, limitation of payment or any other method of payment unrelated to the UCR rate.

76. Anthem on behalf of DEFENDANT did not make reference to any other portion of Patient's plan that would put MEDICAL PROVIDER on notice of any reduction in the originally stated payment percentage.

77. Despite having Anthem make these representations on its behalf, DEFENDANT and Anthem knew or should have known that they would not be paying Medical Provider at the UCR rate.

78. Despite having Anthem make these representations on its behalf, DEFENDANT and Anthem knew or should have known that they would be paying Medical Provider at a Medicare rate.

79. Defendant honestly believed the representations and promises it was making to Medical Provider were true. However, there were no reasonable grounds for Defendant to have had that belief.

80. Anthem on behalf of Defendant intended by its representations to induce Medical Provider to provide the medical services.

81. MEDICAL PROVIDER was never provided with a copy of Patient's plan or even a portion of Patient's plan by DEFENDANT or Patient. As a result, MEDICAL PROVIDER could not even make itself aware of any reduction of the payment amount.

82. Medical Provider relied and provided services solely based on Anthem's representations, promises and statements on behalf of DEFENDANT. Statements which had no relation to DEFENDANT and Patient's plan document, as the statements may or may not have been based in the DEFENDANT or Patient's plan documents, but that bore no consideration when Medical Provider agreed to provide medical services. Medical Provider took Anthem's representations on

- 14 -

behalf of DEFENDANT at face value and provided services based solely on those promises and representations.

83.    In the alternative, pursuant to 29 U.S.C. §1132 (a)(1)(B) DEFENDANT has failed to reimburse Patient and now Medical Provider in accordance with the terms of Patient's ERISA Plan.

84.    On November 09, 2020, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to Medical Provider.

85.    Following the medical procedure, Medical Provider submitted a bill or UB-04 to DEFENDANT which stated that Medical Provider had received an assignment from the Patient.

86.    At no point in time did DEFENDANT or Anthem on behalf of Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

87.    Over the next couple of months, Medical Provider sent numerous appeal letters to DEFENDANT through Anthem in accordance with ERISA to exhaust all of Patient's and now Medical Provider's administrative remedies.

88.    Medical Provider even sent Anthem on behalf of Defendant a copy of the assignment between the Patient and Medical Provider. The assignment specifically stated that if the health plan has an anti-assignment, Anthem on behalf of Defendant should let Medical Provider know. Therefore, in the event, Medical Provider was not made aware of an anti-assignment, Medical Provider would proceed to obtain payment based on the assignment with the understanding that the health plan did not have an anti-assignment.

89.    In fact, Medical Provider was never informed during the appeal process that Patient's plan had an anti-assignment provision, and that DEFENDANT would only speak with the Patient.

90.    DEFENDANT has made clear that Medical Provider has no further administrative remedies.

- 15 -

91.   In all cases DEFENDANT refused to make any additional payment.

92.   According to Defendant's health plan, Defendant is obligated to pay Medical Provider's bill..

93.   Defendant and Anthem did not in fact pay based on Medical Provider's bill.

94.   The total bill was $7,745.00. Defendant paid $1,251.60 which is less than 15% of the billed amount and is not in accordance with the Plan.

95.   Under either scenario, following the procedure, Medical Provider submitted to DEFENDANT through Anthem any and all billing information required by DEFENDANT and Anthem, including a bill for $7,745.00.

96.   Following the procedure, MEDICAL PROVIDER submitted its claims to DEFENDANT through Anthem accompanied with lengthy operative reports, chart notes, and other medical records.  No matter whether large or small, all of MEDICAL PROVIDER's claims were submitted to DEFENDANT using CPT codes, Healthcare Common Procedure Coding System ("HCPCS"), and modifiers, as necessary. MEDICAL PROVIDER submitted to DEFENDANT through Anthem any and all billing information and any and all additional information requested by DEFENDANT.

97.   DEFENDANTS processed the bill and sent an EOB directed to MEDICAL PROVIDER, still not asserting an anti-assignment provision, and made a payment of $1,251.60.

98.   The amount paid was well below Medical Provider's billed amount and well below the UCR amount represented during the separate oral communications between Medical Provider and DEFENDANT.

## **FIRST CAUSE OF ACTION**
## **FOR NEGLIGENT MISREPRESENTATION**

99.   Plaintiff incorporates by reference all previous paragraphs as though fully set forth herein.

FIRST AMENDED COMPLAINT

100.   Anthem on behalf of DEFENDANT falsely represented to Medical Provider that payment for services would be based on UCR and not Medicare.

101.   Anthem on behalf of DEFENDANT knew that any payment made to Medical Provider would not be made the UCR rate and would instead be made at the Medicare rate.

102.   Anthem on behalf of DEFENDANT should have known that in making the representations that payment would be made at the UCR and not Medicare rate that Medical Provider would go on to provide the services.

103.   Medical Provider then relied on Anthem on behalf of DEFENDANT's misrepresentation and provided the services to Patient. Medical Provider has been damaged in not receiving payment at the represented UCR rate.

104.   Medical Provider is owed an amount to be determined at trial.

## SECOND CAUSE OF ACTION
## PROMISSORY ESTOPPEL

105.   Plaintiff incorporates by reference all previous paragraphs as though fully set forth herein.

106.   Anthem on behalf of DEFENDANT promised and asserted that the procedures to be performed and which were performed for and on the Patients were covered, authorized, certified and would be paid for at the rate of reasonable and customary and or average billed charges of similarly situated medical providers within similarly situated areas or places of practice, UCR.

107.   Medical Provider only decided to provide services because they were assured that payment would be made at the UCR rate not based on Medicare.

108.   After assuring and promising Medical Provider that payment would be at the UCR rate, DEFENDANT should have reasonably expected that Medical Provider would then go on to provide medical services expecting that payment would be made at that rate.

FIRST AMENDED COMPLAINT

109.   Medical Provider did rely on the statements, assertions and promises of Anthem on behalf of DEFENDANT and provided the medical services to the Patient.

110.   As a direct and proximate result of Anthem on behalf of DEFENDANT's misrepresentations, Medical Provider has been damaged in an amount equal to the amount of money Medical Provider should have received had DEFENDANT paid the cost of the procedures at the UCR rate.

111.   The detriment suffered by Medical Provider is the amount required to make Medical Provider whole, for the time, cost and money expended in providing medical services to Patient. As a further direct, legal, and proximate result of Medical Provider's detrimental reliance on the oral agreement and the misrepresentations of defendants, and each of them, Medical Provider has been damaged due to the loss of monies expended in providing said medical services for which it was significantly underpaid and has suffered damages in the loss of use of the proceeds and income to be derived from the medical services.

112.   In light of the material representations and misrepresentations of Anthem on behalf DEFENDANT made to Medical Provider, and of Medical Provider's reliance on the oral agreement, and oral representations made by DEFENDANT and each of them, and based upon Medical Provider's detrimental reliance thereon, DEFENDANT, and each of them, are estopped from denying payment and indemnification for Patient's treatment at the reasonable and customary and or market rate.

113.   Medical Provider is owed an amount to be determined at trial.

## THIRD CAUSE OF ACTION

## ENFORCEMENT UNDER 29 U.S.C § 1132 (a)(1)(B) FOR FAILURE TO PAY ERISA PLAN BENEFITS

115.   This cause of action is alleged by Medical Provider for relief in connection with claims for medical services rendered in connection with healthcare benefits plans administered and/or underwritten by DEFENDANT.

116.   Medical Provider seeks to recover benefits and enforce rights to benefits under 29 U.S.C. §1132 (a)(1)(B). Medical Provider has standing to pursue these claims as the assignee of member/patient's rights. As the assignee of rights, Medical Provider is a "beneficiary" entitled to collect benefits and are the "claimant" for purposes of the ERISA statute and regulations. ERISA authorizes actions under 29 U.S.C. § 1132 (a)(1)(B) to be brought directly against DEFENDANT the party with actual control over the benefit and payment determinations with respect to Medical Provider's claims.

117.   DEFENDANT is the payor of benefits.

118.   By reason of the foregoing, Medical Provider is entitled to recover ERISA benefits due and owing in an amount to be proven at trial, and Plaintiff seeks recovery of such benefits by way of the present action.

///
///
///
///
///
///
///
///
///
///
///
///
///

- 19 -

1   ///

2   ///

3   ///

4   ///

5   ///

6   ///

7   ///

8   ///

9   ///

10  ///

11  ///

12  ///

13              **<u>PRAYER FOR RELIEF</u>**

14          **WHEREFORE,** Keith Feder, M.D., Inc. prays for judgment against

15  defendants as follows:

16          1.      For compensatory damages in an amount to be determined, plus

17  statutory interest;

18          2.      For restitution in an amount to be determined, plus statutory interest;

19          3.      For a declaration that DEFENDANT is obligated to pay plaintiff all

20  monies owed for services rendered to the Patient;

21          4.      For attorney fees; and

22          5.      For such other relief as the Court deems just and appropriate

23

24  Dated: June 30, 2024              LAW OFFICE OF JONATHAN A.
                                      STIEGLITZ
25

26                                    By: /s/ Jonathan A. Stieglitz
                                          JONATHAN A. STIEGLITZ
27                                        Keith Feder, M.D., Inc.

28

                                    - 20 -

1

2

3

## **DEMAND FOR JURY TRIAL**

4

Plaintiff, Keith Feder, M.D., Inc., hereby demands a jury trial as provided by

5

law.

6

7    Dated: June 30, 2024                    LAW OFFICE OF JONATHAN A.
                                             STIEGLITZ
8

9                                            By: /s/ Jonathan A. Stieglitz
                                                 JONATHAN A. STIEGLITZ
10                                               Attorneys for Plaintiff,
                                                 Keith Feder, M.D., Inc.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT

**POS-010**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Jonathan A. Stieglitz, Esq. (SBN 278028)<br>THE LAW OFFICES OF JONATHAN A. STIEGLITZ<br>11845 Olympic Blvd., Suite 800<br>Los Angeles, CA 90064<br><br>TELEPHONE NO.:  (323) 979-2063        FAX NO. *(Optional):*   (323) 488-6748<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):*  Keith Feder, M.D., Inc. | *FOR COURT USE ONLY*<br><br>**Electronically FILED by<br>Superior Court of California,<br>County of Los Angeles<br>7/15/2024 10:00 AM<br>David W. Slayton,<br>Executive Officer/Clerk of Court,<br>By M. Gonzalez, Deputy Clerk** |

| | |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF  LOS ANGELES<br>STREET ADDRESS: 111 N. Hill Street<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: Los Angeles, CA 90012<br>BRANCH NAME: Stanley Mosk Courthouse | |

| | |
|---|---|
| PLAINTIFF/PETITIONER:  Keith Feder, M.D., Inc.<br>DEFENDANT/RESPONDENT:  Anthem Blue Cross Life and Health Insurance Co. | CASE NUMBER:<br>24STCV01720 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:

   a. ☒ summons

   b. ☐ complaint

   c. ☐ Alternative Dispute Resolution (ADR) package

   d. ☐ Civil Case Cover Sheet *(served in complex cases only)*

   e. ☐ cross-complaint

   f. ☒ other *(specify documents):* First Amended Complaint

3. a. Party served *(specify name of party as shown on documents served):*
   Anthem Blue Cross Life and Health Insurance Co.

   b. ☒ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person
   under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
   Sarai Marin, Authorized To Accept Service Of Process

4. Address where the party was served:
   C.T. Corporation Systems, 330 N. Brand blvd. Suite 700, Glendale, CA 91203

5. I served the party *(check proper box)*

   a. ☒ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to
   receive service of process for the party   (1) on *(date):* July 12, 2024          (2) at *(time):* 11:22AM

   b. ☐ **by substituted service.** on *(date):*          at *(time):*          I left the documents listed in item 2 with or
   in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business
      of the person to be served. I informed him or her of the general nature of the papers.

      (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual
      place of abode of the party. I informed him or her of the general nature of the papers.

      (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing
      address of the person to be served, other than a United States Postal Service post office box. I informed
      him or her of the general nature of the papers.

      (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served
      at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on
      *(date):*          from *(city):*          **or** ☐ a declaration of mailing is attached.

      (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

**Page 1 of 2**

POS-010

| PLAINTIFF/PETITIONER: Keith Feder, M.D., Inc. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Anthem Blue Cross Life and Health Insurance Co. | 24STCV01720 |

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*                     (2) from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

  a. ☐ as an individual defendant.

  b. ☐ as the person sued under the fictitious name of *(specify):*

  c. ☐ as occupant.

  d. ☒ On behalf of *(specify):* Anthem Blue Cross Life and Health Insurance Co.

    under the following Code of Civil Procedure section:

| | |
|---|---|
| ☒ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: Limited Liability Company |

7. **Person who served papers**

  a. Name: George Todd

  b. Address: 14417 Chase Street #187, Panorama City, CA 91402

  c. Telephone number: (818)-515-4620

  d. **The fee** for service was: $ 30.40

  e. I am:

    (1) ☐ not a registered California process server.

    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).

    (3) ☒ a registered California process server:

        ☐ owner     ☐ employee     ☒ independent contractor.

      (ii) Registration No.: 2016159739

      (iii) County: Los Angeles

8. ☒ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    **or**

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: July 14, 2024

George Todd
_____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶ *George Todd*
_____
(SIGNATURE)

POS-010 [Rev. January 1, 2007]       **PROOF OF SERVICE OF SUMMONS**       **Page 2 of 2**

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**      Print this form      Save this form      Clear this form

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State, Bar number, and address):*<br>**Law Office of Jonathan A. Stieglitz**<br>**11845 W Olympic Blvd., Suite 800 Los Angeles**<br>**CA 90064** | *FOR COURT USE ONLY* |
|---|---|
| TELEPHONE NO.: **213-601-9501**        FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* **KEITH FEDER, M.D., INC** | **Electronically FILED by**<br>**Superior Court of California,**<br>**County of Los Angeles**<br>**7/15/2024 10:08 AM**<br>**David W. Slayton,**<br>**Executive Officer/Clerk of Court,**<br>**By M. Gonzalez, Deputy Clerk** |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES | |
|---|---|
| STREET ADDRESS: **111 North Hill Street** | |
| MAILING ADDRESS: **111 North Hill Street** | |
| CITY AND ZIP CODE: **Los Angeles 90012** | |
| BRANCH NAME: **Central District, Stanley Mosk Courthouse** | |

| PLAINTIFF/PETITIONER: **KEITH FEDER, M.D., INC** | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: **ANTHEM BLUE CROSS LIFE AND HEALTH I NSURANCE CO., ET AL** | **24STCV01720** |

| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>**Feder v. Anthem Blue, et al.** |
|---|---|

**BY FAX**

1.  At the time of service I was at least 18 years of age and not a party to this action.

2.  I served copies of *(specify documents):*
    **SUMMONS; FIRST AMENDED COMPLAINT**

3.  a.  Party served *(specify name of party as shown on documents served):*
        **Carpenters Southwest Administrative Corporation**

    b.  [X]  Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b whom substituted service was made) *(specify name and relationship to the party named in item 3a ):*
        **Daniel M. Shanley**

4.  Address where the party was served:
    **533 S. Freemont Ave, 7th Floor, Los Angeles, CA 90071**

5.  I served the party *(check proper box)*
    a.  [X]  **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* **07/15/2024** at *(time):* **9:15 AM**

    b.  [ ]  **by substituted service.** On *(date):*         at *(time):*         I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

        (1) [ ]  **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

        (2) [ ]  **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

        (3) [ ]  **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

        (4) [ ]  I thereafter caused to be mailed (by first class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc § 415.20). Documents were mailed on *(date):*         from *(city):*         **or** [ ] a declaration of mailing is attached.

        (5) [ ]  I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 3

REF: **Feder v. Anthem Blue, et al.**

| PLAINTIFF/PETITIONER: KEITH FEDER, M.D., INC | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: ANTHEM BLUE CROSS LIFE AND HEALTH I NSURANCE CO., ET AL | 24STCV01720 |

c. ☐ **by mail and acknowledgement of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*              (2) from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgement of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgement of Receipt.)* (Code Civ. Proc., § 415.30)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

a. ☐ as an individual defendant.

b. ☐ as the person sued under the fictitious name of *(specify):*

c. ☐ as occupant.

d. ☒ On behalf of *(specify)* **Carpenters Southwest Administrative Corporation c/o Daniel M. Shanley**

    under the following Code of Civil Procedure section:

    ☒ 416.10 (corporation)          ☐ 415.95 (business organization, form unknown)

    ☐ 416.20 (defunct corporation)      ☐ 416.60 (minor)

    ☐ 416.30 (joint stock company/association)    ☐ 416.70 (ward or conservatee)

    ☐ 416.40 (association or partnership)     ☐ 416.90 (authorized person)

    ☐ 416.50 (public entity)           ☐ 415.46 (occupant)

                                       ☐ other:

7. **Person who served papers**

    a. Name:           **Elver Barrera**

    b. Address:       **4451 W 130th St Apt 1b, Hawthorne, CA 90250**

    c. Telephone number:  **424-391-7834**

    d. The fee for service was: **$ 75.00**

    e. I am:

      (1) ☐ not a registered California process server.

      (2) ☐ exempt from registration under Business and Professions Code section 22350(b).

      (3) ☒ registered California process server:

        (i) ☐ owner  ☐ employee  ☒ independent contractor.  For:  **ABC Legal Services, LLC**

        (ii) ☒ Registration No.: **2022018468**    Registration #: **6779**

        (iii) ☒ County:  **Los Angeles county**    County:  **Los Angeles**

**BY FAX**

POS-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Tracking #: **0137795939**

REF: **Feder v. Anthem Blue, et al.**

8. [X] **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9. [ ] **I am a California sheriff or marshal and I certify** that the foregoing is true and correct.

Date: 07/15/2024

_____
**Elver Barrera**
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

_____
(SIGNATURE)

Page 3 of 3

---

**PROOF OF SERVICE OF SUMMONS**

REF: **Feder v. Anthem Blue, et al.**

Tracking #: **0137795939**

